(22 Misc. Rep. 629.)

## In re MILLS.

(Supreme Court, Special Term, New York County. February, 1898.)

TRUSTS—LIFE ESTATE—SALE FOR BENEFIT OF REMAINDER-MEN—JURISDICTION.
> Under Real Property Law (Laws 1896, c. 547), as amended by Laws 1897, c. 136, declaring that every sale, conveyance, or other act of the trustee in contravention of the trust, except as therein provided, shall be absolutely void, where the trust is expressed in the instrument creating the estate, and providing that the supreme court may authorize the trustee to mortgage or sell such real property whenever it appears that for "peculiar reasons," or on account of "peculiar circumstances," it is "for the best interest of said estate," the court was without jurisdiction to order a sale of certain real property which had been devised in trust for the benefit of certain tenants for life, with remainder over to certain persons, if living at the time of the termination of the particular estate, and to the issue of any deceased, for the purpose of paying off certain incumbrances created by the remainder-men, which in no manner affected the trust estate.

Application by Adelaide Mills, as trustee, etc., for authority to mortgage or sell the real property constituting the trust estate. On motion to compel the purchasers to take title under a sale at public auction in pursuance of a final order in such proceeding. Denied.

William Man, for petitioner.
Julius J. Frank and Myer S. Isaacs, for purchasers.

BEEKMAN, J. This is a motion to compel the purchasers to take title to the real property above mentioned, which was sold to them at public auction pursuant to the final order in this proceeding. Their refusal to complete is based solely upon certain objections to the proceedings, which, if well taken, are fatal to the power of the trustee to convey a title in fee simple absolute. It appears that prior to April 8, 1865, one Richard Cromwell died seised and possessed of the prem-

ises in question, leaving a will and codicil thereto, which were duly admitted to probate on the date above mentioned. The codicil contains the devise which it becomes necessary to consider. Under such codicil the testator devised the premises in question to two trustees in trust to collect the rents during the lives of his daughter-in-law, Elizabeth R. Cromwell, widow of his deceased son, Richard Cromwell, and his sister-in-law, Anna Merritt, and, after paying the expenses of administration, to apply one half of the net income to the payment of the interest and principal of a mortgage which affected the premises (now paid), and to apply the other half of the net income, or, in case there should be no mortgage upon the property, the whole of said net income, in the following manner, namely: To pay the sum of $500 a year, in equal quarterly payments, to said Elizabeth R. Cromwell, during her natural life; also, to pay to the said Anna Merritt the sum of $500 a year, in equal quarterly payments, during her natural life; and to apply the remainder of said net income to the support and education of the children of testator's deceased son, Richard; if such remainder of said net income should be more than sufficient for the support and education of the children, then to accumulate the same for their benefit until the termination of the trust. It was further provided as follows:

"After the death of my said daughter-in-law and sister-in-law it is my will that the said property in this clause devised, and the accumulations of the net income above named, shall go and be divided in fee to and amongst the children of my said son, Richard, who shall be then living, and the issue of such as may be dead; the issue of such deceased children of my said son to take the share of their deceased parents."

The two trustees have since deceased, and the petitioner, who is a daughter of testator's deceased son, Richard, has been appointed in their place to administer the trust. The persons in being who are now interested in the property are as follows: Elizabeth R. Cromwell, who is entitled to an annuity of $500; Frank Cromwell, Albert Cromwell, and Adelaide Mills, comprising all the children of testator's deceased son, Richard; the five infant children of the said Albert Cromwell; and the four infant children of Adelaide Mills. Frank Cromwell is unmarried and without issue. It will be observed that under the devise only those children of the testator's deceased son, Richard, who are living at the termination of the trust, are entitled to share in the property. They take a vested remainder, subject, however, to be defeated by their decease before the termination of the particular estate; and, in that event there is a substitutionary gift in favor of the issue of any such children who may have so died, such issue taking, as purchasers under the will, the share which the deceased parent would otherwise have had. Anna Merritt, one of the cestuis que vie, is dead, and the duration of the trust is now dependent solely upon the life of Mrs. Elizabeth R. Cromwell. The will contains no power to sell or mortgage the premises in question. It appears from the record in this proceeding that Mrs. Mills has conveyed her interest in the remainder to her infant children. It also appears that, prior to the conveyance so made, she and her brothers Frank and Albert on December 19, 1888, mortgaged their interests under the

will in the property in question to William Man, as trustee, to secure
the payment of the sum of $15,000 and interest. Subsequently,
Albert Cromwell from time to time made other mortgages to the same
mortgagee upon the one undivided third part of said property to which
he was entitled in remainder, subject to the contingency expressed in
the will, to secure further loans made to him, aggregating $12,500 and
interest. Adelaide Mills did not receive any portion of the moneys
which were realized upon the mortgage first above mentioned, and, in
order to indemnify her, her two brothers executed mortgages to her
upon their respective interests. In addition to the mortgages so
taken by Mr. Man, certain life insurance policies upon the lives of the
mortgagors were taken out or transferred to him as additional se-
curity. Subsequently an action was instituted by him to foreclose
his mortgages, and on January 27, 1896, a judgment of foreclosure
and sale was duly entered; the sum due thereon amounting now to
about $40,000. No sale has as yet been had under this judgment.
This proceeding is instituted under section 85 of the real property law,
as amended by chapter 136 of the Laws of 1897. As thus amended,
that section declares that, if the trust is expressed in the instrument
creating the estate, every sale, conveyance, or other act of the
trustee in contravention of the trust, except as therein provided, shall
be absolutely void. It then states that:

"The supreme court may by order, on such terms and conditions as seem just
and proper, authorize any such trustee to mortgage or sell such real property or
any part thereof whenever it appears to the satisfaction of the court that said
real property, or some portion thereof, has become so unproductive that it is for
the best interest of such estate, or that it is necessary or for the benefit of the
estate to raise funds for the purpose of preserving it by paying off incumbrances
or of improving it by erecting buildings or making other improvements, or that
for other peculiar reasons, or on account of other peculiar circumstances, it is
for the best interest of said estate, and whenever the interest of the trust estate
in any real property is an undivided part or share thereof, the same may be sold
if it shall appear to the court to be for the best interest of such estate."

The reasons given by the trustee, who is the petitioner, for the au-
thority to mortgage or sell which she asks, are that it is necessary
for the preservation of said estate that the judgment of foreclosure
and sale so made shall be paid and satisfied, and that unless it is so
paid and satisfied the interests of the parties entitled in remainder
will be sold under said judgment; that a sale under such circum-
stances will not yield the actual value of the property, whereby heavy
deficiency judgments will result against Frank Cromwell, Albert
Cromwell, and Mrs. Mills, and the interests of the parties, including
those of the infants, will be sacrificed and lost to them. The referee
to whom the matter was referred approved of these grounds as suf-
ficient, and advised the court that an order to mortgage or sell should
be granted. The report has been confirmed by an order of this court
which authorizes the property to be mortgaged or sold, and directs the
proceeds, after the payment of certain costs and expenses attending
the proceeding, to be applied to the satisfaction of the judgment of
foreclosure and sale which has been recovered by Mr. Man. The peti-
tioner has reported to the court that, being unable to find a person
who was willing to make the loan, she has sold one of the parcels at

public auction to Messrs. Rosenweig and Franklin, for the sum of $30,500, and the other parcel to Herbert B. Plass, for the sum of $24,100. The objection of the purchasers to the title tendered to them rests upon the contention that the court had no power or jurisdiction, under the statute, to authorize either a mortgage or a sale of the property on any of the grounds stated in the proceedings. It becomes necessary, therefore, to consider the nature and scope of the statute under which this proceeding has been taken. At the outset it may be said that the policy of the state has always been that the trustee of an express trust, such as the one now under consideration, should have no power to alienate the trust property, except in so far as he might be permitted so to do by the instrument creating it. The object was a meritorious one. It was recognized that cases constantly occurred where it was of importance that a testator should be able to make a sure and certain provision for the support of claimants upon his bounty, which would be quite beyond the ability of any one to defeat or impair by improvident or wrongful act; and accordingly it was provided by statute that any act of the trustee in contravention of this trust should be void, and also that the beneficiary should have no power to alienate or incumber the income, for the payment of which to him the trust was created. That still continues to be the law of the state, and its policy, except in certain contingencies, which since the year 1882 have been grafted upon the statute, and which are now expressed in section 85 of the real property law, as above quoted. It was found that conditions at times supervened after the creation of the trust, presumably not anticipated by its creator, which either imperiled the trust property, or rendered it so unproductive that the object of the trust had become wholly or in part defeated, or which made it necessary to improve it. It was for the purpose of further protecting the trust estate and sustaining it that the provisions thus added to the statute were enacted, as I think the context of the section in question clearly shows. It was not the intention of the legislature to abridge or modify in any way the scheme or nature of the trust and its dependent limitations, or to subvert in any way the general intention of the creator of the trust, but solely to furnish the trustee with means for its protection which otherwise were not available. In the case at bar there is no claim, nor could there be any, on the facts presented, that there was any occasion to mortgage or sell the property in question because it was unproductive, or that there was any necessity for improving it. There are therefore but two of the grounds specified in the statute on which this proceeding could be predicated: Either that there are incumbrances affecting the trust estate which must be discharged, or that other "peculiar reasons" or "other peculiar circumstances" exist which render it "for the best interest of said estate" that the authority asked for should be granted.

The question, then, which first arises, is: Are the incumbrances in question within the purview of the statute? Doubtless an application for leave to mortgage or sell may properly be made where there are prior mortgages which must be paid off, or where assessments for public improvements have been imposed, or taxes have fallen in ar-

rears, or where there are other liens or charges affecting the property that are paramount, and which are susceptible of enforcement under conditions which would imperil the trust estate. But in all cases the incumbrances must be of such a character that it is necessary to discharge them, in the words of the statute, "for the purpose of preserving the estate." It is, I think, quite plain that the case at bar does not at all come within the meaning and intent of the statute. In the first place, the incumbrances are mortgage liens which do not affect the trust estate at all. They were not created by the testator, nor by the trustee, but by those entitled only in remainder. In no way can the trustee be affected by them, or by a sale under the judgment foreclosing them. In the event of such a sale the trust estate would still continue, the limitations over would remain unimpaired, and the only effect of it would be a transfer of ownership from one person to another. What possible interest, then, has the trustee, as such, in the matter? The trust estate is not imperiled, nor are the interests in remainder in jeopardy, by reason of any such sale. Whether the estates in expectancy are to go to the remainder-men mentioned in the will, or to their grantees, is of no possible concern to the trustee. The remainder-men have a legal right to sell and convey their interests, and the purchaser would stand in all respects in the shoes of his grantors, claiming the property through the latter, subject to the same contingencies, and in entire harmony with the devise. The fallacy of the contention of the petitioner is thus made quite plain. The only persons who can suffer from the conditions described in the petition are the remainder-men named in the will, who have by their voluntary act incumbered their interests in the property; and they suffer solely from consequences of their own creation, and not by reason of any exigency which concerns the trust estate, or through any lack of power on the part of the trustee to protect or preserve it. In short, the matters complained of are purely collateral, and do not prejudicially affect the devise, or the property which is the subject of the devise. But it is contended that the proceeding may be sustained on the ground that the facts relied upon in support of it come within the other provision of the statute, which permits a mortgage or sale where it appears to the satisfaction of the court "that for other peculiar reasons or on account of other peculiar circumstances it is for the best interest of said estate." It is clear, however, that this provision must be construed in the light of the general intention and purpose of the statute. That general purpose and intention, as we have seen, was to prevent the trust estate from being defeated in whole or in part by reason of circumstances subsequently arising which threatened its integrity, and where the limitations upon the power of the trustee left him without adequate remedy. The rule, "Noscitur a sociis," applies, and the cases of which cognizance can be taken under this general clause must be those of the same general character as the particular instances previously enumerated. Again, by the necessary import of the language used, the peculiar reasons or circumstances must be such as relate to the trust estate, and its well-being; for by the terms of the statute they must be of such a character as to render it "for the best interest of said estate"

that a sale or mortgage should be authorized.    That is not the case here.    As I think I have already shown, the reasons given for a mortgage or sale of the property in question have no relation to the preservation, protection, or improvement of the trust estate.    This being so, the case is not one which comes within the statute, and the court was therefore without jurisdiction to make the order under which the sale has been had.    Indeed, it is difficult to see how any other conclusion is possible.    It is proposed to sell the entire trust property in order to pay the indebtedness of certain remainder-men, which they by their voluntary acts have charged upon their interests; thus absorbing about four-fifths of the corpus of the estate for purposes which have nothing to do with the trust or its administration.    Is this an act for the preservation, protection, or improvement of the trust estate?    But this is not all.    It is further proposed to cut off the contingent remainder-men—those not in being as well as those in being—from any interest in the property, and to destroy the limitations made by the testator in their favor for the benefit of their parents, although their estate is derived in no sense through their parents, but directly from the testator, under the will.    It will not, of course, be disputed that no lien, charge, or conveyance which might be created or made by the parents could possibly affect the contingent limitations in favor of the children.    The interests are separate, distinct, and independent. But, if this proceeding is to be upheld, the court will be in the position of having appropriated the property of the children to pay the debts of their parents, without shadow of justification for it in law or in morals.    The simple statement of the proposition suggests its refutation.    It is manifest that the legislature never intended to sanction such an act of spoliation; nor could it, within its constitutional limitations, authorize property to be taken from one person and given to another, or applied to the discharge of the debt of another.    It is manifest that the grounds on which this proceeding has been predicated find no support whatsoever in the statute.    The expedients adopted to mitigate the effect of the order with respect to the interests of the contingent remainder-men do not avoid the unlawful invasion upon their rights which has been attempted.    Counsel for petitioner calls attention to section 87 of the real property law, as amended by chapter 136, Laws 1897, which provides, among other things, that the final order in such a proceeding as this shall be valid and effectual against all minors and persons not in being, interested in the trust, or having estates, vested or contingent, in reversion or remainder, in the real property affected.    But this, of course, presupposes a proceeding properly initiated on one or more of the grounds sanctioned by the preceding section, and power in the court to confer the authority which the order expresses.    If this is absent, the order is a nullity, and has no effect whatsoever.    Especially must this be so with respect to those not in being, in whose favor future estates in the property have been created, and with respect to whom no estoppel could be claimed by reason of any acquiescence in, or assent to, the order, even assuming, which I do not concede, that such an order could bind any one who was not free to transfer his interest in the property without it.    I think it is plain that the petitioner is unable to tender a

good title to the purchasers, and that the motion to compel them to complete the purchase must be denied, with costs.

Motion denied, with costs.